Case number 18-4033, Azal Saleh v. William Barr. Arguments not to exceed 15 minutes per side. Mr. Robinson, you may proceed for the petitioner. Good afternoon, your honors. Good noon. And yeah, sorry, the afternoon. I may please the court, Ruby Robinson for the petitioner, Azal Saleh. With the court's permission, I request three minutes for rebuttal. All right. I am here today to seek this court's redress for two sets of clear legal errors that occurred before the board and before the immigration judge. Number one, that the criminal statute that led to the petitioner being placed in proceedings is not an aggravated felony. Number two, that there was insufficient legal standards used and applied in deciding the petitioner's claim for protection under the Convention Against Torture, which implicates serious due process concerns. Let's begin with criminal sexual conduct and the sexual abuse of a minor. So there are three reasons why criminal sexual conduct in the fourth degree in Michigan is not an aggravated felony. Number one, after Esquivel-Quintana in 2017, the Supreme Court strongly hinted that another section of federal law, the criminal definition for sexual abuse of a minor, found at 2018 USC 2243, should be the primary starting point for the definition for this aggravated felony. Can we start, though, with the government's waiver slash forfeiture argument? It seems like your argument here might be unexhausted, because it's somewhat distinct from your argument that you made to the Bureau, in that there, you seem to be arguing that the first section was not a severable provision. Now you seem to be arguing, even accepting that it's still the first provision of the Michigan statute doesn't qualify as sexual abuse of a minor. Why shouldn't we find it forfeited, I guess, is the short way to say it. That's a great question, Your Honor. So we did address this back in the underlying, the first round before the immigration judge. And that's found at, give me one second, I have the administrative record. One moment. So the concept of abuse and whether abuse, so the first thing I would say is Esquivel-Quintana occurred after the first BIA decision was decided. So it was still kind of an ongoing matter. So we didn't, the Supreme Court's decision about what it means and focusing on 2243 did not yet exist at the time that we were first before the board. Secondly, we did raise divisibility. We raised what was considered abuse or not abuse, both with the underlying immigration judge and then when the board addressed divisibility back in its first decision. But do you think, it seems like our cases suggest that exhaustion might be jurisdictional. Do you have a view on whether the Supreme Court has, in recent years, said both it and lower courts have been labeling everything jurisdiction when, in fact, it's not jurisdiction. It's just a claims processing rule. Do you have a view on whether exhaustion of administrative remedies, the statutory provision, creates a jurisdictional limitation on our review? So I don't have a case on point for that, Your Honor. I would, I do allege that we have maintained that this has not yet been exhausted and that the claim was not, the claim was still ripe for review because it was decided in the first immigration court case and then raised the BIA, sent back down to the lower immigration court, sent again to the BIA, and then we're bringing it here. So kind of that claim remained ripe throughout the entire course of the litigation. So in regard to the second point, the minimum conduct under the Michigan statute is broader than the generic federal definition for sexual abuse of a minor if we're relying on 2243, which means under the categorical frameworks, Taylor, Moncrief, Decombs, Mathis, et cetera, that when there is no categorical match, the modified categorical approach applies. And if that does exist, then we kind of go back to the categorical approach to see if there's a match to see if the conduct is greater than what the generic federal definition applies. And we argue, again, that there is no match. And so therefore, it would not be an aggravated felony. And then the third basis is the evolving federal definition of sexual abuse of a minor, which is not defined anywhere in the Immigration and Naturalization Act, requires knowledge and that there is no mens rea. The federal definition for the crime in 2243 requires some type of knowledge, requires some type of intent requirement. Where do you get that, though? Because the way I read Esquivel-Quintana is it basically did a kind of a summary of state laws, analogous state laws, not limited to the federal provision that you cited, and used that as its basis for the kind of generic offense. And you don't really do that in your brief. I took a quick look at some of the state statutes that are analogous. And I couldn't find any state statute that suggested that knowledge of age was an independent element. So I think that doesn't Esquivel-Quintana suggest that that's the right approach? And if I engage in that approach, can't find this mens rea element, what am I supposed to do? Esquivel-Quintana focuses on the context of statutory rape. The matter here is not statutory rape at all. And returning to what Esquivel-Quintana looked at, Esquivel-Quintana focused on an analogous but much more broader civil statute, 3509A8, referring to what sexual abuse refers to. And there's actually kind of a three-step process where 3509A8 refers to sexual abuse. And then it says, oh, it can include sexually explicit conduct. And then it says, oh, sexually explicit conduct can refer to sexual contact. Whereas 2243, sexual abuse, 2243C, says sexual abuse is defined in 2246. And it has a list of what those requirements are. And they are that they require, number one, knowingly engaging, two, the sexual act with another person, three, who is between 12 and 15 years of age, and number four, with at least a four-year age differential. So if we apply, if we go back and apply the Michigan criminal sexual conduct in the fourth degree to the generic federal definition under criminal law of what sexual abuse of a minor is, we see that in Michigan, the minimum conduct requires, number one, an intentional touching of a genital, a groin, a thigh, a butt, a breast, or clothing. Number two, touching done for a sexual purpose or reasonably construed to be done for a sexual purpose. And number three, one of multiple aggravative elements, such as an age differential, a forced coercion. So this is, for the sake of argument, we're accepting the government's position that the statute is divisible. And we're looking kind of in the modified categorical approach. But accepting that, it would still be permissible to commit the Michigan Act by offensive touching through clothing, whereas under the federal statute, 2243, touching through clothing is actually not. But you're still just focused on the 2243. And the court just said that that was one data point. It said we rely on 2243 for evidence of the meaning of sexual abuse of a minor, but not as providing the complete or exclusive definition. And then in the next section, it went on and kind of discussed a state by state survey, so to speak. And from my review of the survey as applied here, I still haven't been able to find at least, I guess, anything with respect to mens rea as to the victim's age. Right. So I would say when the courts looked at Esquivel-Quintana and they looked at the underlying statute and they looked at the previous case before that, which was Matter of Rodriguez-Rodriguez, that looked at two different statutes, 2243 and 3509, and basically examined the two of them and saw that 3509 creates a broader context to determine sexual abuse of a minor. And the Texas statute, which is currently the BIA's definition, the board's definition, it was based on a Texas offense of indecency with a child. And in that decision, the court said, there's not enough here for it to be sexual abuse of a minor under 2243, so we need something broader. And it looked at 3509. If I may, I'm going to return to this in the rebuttal. I'd like to get to the Convention Against Torture Claims. So moving on to the petitioner's torture claim, we argue the board and the immigration court committed three illegal errors. Number one, they held that the petitioner to an impossible evidentiary standard for proof of similarly situated Iraqi women who were tortured upon deportation. Number two, they failed to consider and address in writing all bases upon which the petitioner could be tortured. And number three, they read and misapplied matter of JFF for more than it stands for. But for these errors, the board and or the immigration judge would have seen that it is more likely than not that the petitioner would be tortured upon return to Iraq. So regarding the impossible evidentiary standard, it is a common judicially noticeable fact that Iraq has not been accepting most deportees for decades and until recently had just started to accept some. And so proving what happens to Iraqi women who've been deported is essentially a factual impossibility. To our knowledge, there are none to almost no women who have been deported to Iraq. And so similar to Tran versus Gonzalez, the 2006 case, which focused on a Vietnamese man of ethnic Chinese origin who the board required to prove similarly situated persons being tortured upon return to Vietnam, this court determined that it was essentially an impossible burden and implicated his due process rights to point to to require him to prove a non-event. Next, I want to address one of the concerns raised by Judge Stranch. Thank you and her procurium stay of removal for our client granted this August, who stated that in that it was not clear enough that the board or the immigration judge fully considered her claims independently. So nowhere in the three-page board decision from September 2018 does the board analyze independently her non-prostitution-based immutable traits for fearing torture. It does not really consider that she's a Christian convert, that she's Western, that she's a perceived lesbian, that she's a felon, that she's a trafficking victim. It notes these as factors, but mentioning a fear just based on a trait alone is not the same thing as analyzing it. How would you respond to our Shaqiri decision, which seems to reject a similar attack on the relevant BIA case on the chain of causation? So in regard to Shaqiri, we appreciate and acknowledge the court's acceptance of the in the aggregate approach, but I think that Shaqiri is different from the petitioner here. In Shaqiri, the court actually did examine them, did examine the independent factors and combine them together, and stated specifically that fear of torture at the hands of the PMF and the Iraqi government is too speculative. In this case, neither the board nor the immigration judge analyzed her independent bases separately, let alone together. So it just stated these are factors, and then nowhere in the decisions, either in the board decision from September 2018 or the immigration judge's decision from April 2018, does it actually focus and provide an analysis for why each of those factors, why she would more likely than not be tortured on them independently or in the aggregate. Thank you. Good afternoon. Good afternoon. You may proceed. May it please the court, Your Honor, it's Tim Remnitz on behalf of the United States Attorney General. Two issues in this case that's been discussed are his client's movability as an alien convicted aggravated felony sexual abuse of a minor, and second, denial of her cat protection claim. Starting with her movability, the court engages in a categorical comparison to determine whether or not this meets the federal generic definition of sexual abuse of a minor. A definition of sexual abuse of a minor has been refined by the Supreme Court for crimes such as this, for the sexual offense prescribed based solely on the ages of the participants. And for that, they narrowly looked at a definition of minor. And for the definition of minor for a crime like this has to prescribe a victim under the age of 16. Can I start again with the waiver argument that you made initially? Why wasn't it enough for them to just say this statutory conviction doesn't qualify under the aggravated felony statute? Why wasn't that enough to exhaust? Why did they have to allege specific arguments in support of that general claim? Well, I think they're just arguing divisibility in their appellate brief to the board. And what they're now trying to argue is challenges to the definition itself of sexual abuse of a minor. And that is something this court previously held before Supreme Court's decision that the board is owed deference on. So it's not simply divisibility is something the board is never owed deference on. That's a legal determination the courts make routinely without benefit of the board's opinion. And here, petitioners are trying to add new elements into sexual abuse of a minor. For example, this knowledge of age requirement. These are claims that have to be first exhausted for the board because the board gets an opportunity to say what the definition of sexual abuse is, or what a minor is. But what Supreme Court told us is that the board was wrong on what a minor is for these types of crimes. A minor now is someone under 16 for these types of crimes. That's all that Supreme Court did. Meanwhile, what this court did leading up to Esquivel-Gantana and its decision, Esquivel-Gantana, it granted deference to the board's determination, the broader determination, of what constitutes sexual abuse. And that's a matter of Rodriguez-Rodriguez. And the court noted that the statute is ambiguous. It doesn't cross-reference any particular definition, much less the definition at 2243 that the petitioner urges the court to adopt. And the court- How does the rule of lenity relate to that ambiguity? I don't think that- I know that Esquivel-Gantana discussed the rule of lenity in dissent and the majority opinion. But you'll notice the Supreme Court, when it got to Esquivel-Gantana, did not address Chevron or lenity. But previously, lenity has only been applied to criminal statutes and not these hybrid, if you could call them that, hybrid civil criminal statutes. So I think there's no Supreme Court precedent that would allow the rule of lenity to take precedent here over Chevron deference. And meanwhile- The way I read Esquivel-Gantana was the state survey. And your brief didn't necessarily engage in the state survey either. So did you canvass at all the state laws, on the most analogous state laws, to see if knowledge of the age was a requirement of the offense? Do you concede that that is a relevant factor? I did not personally canvass this. But I relied on those cases with similar statutes. So we have those cases, the Eighth Circuit, the Third Circuit, the Seventh Circuit, which all looked at very similar statutes. I grant you that. But none of them engaged in the type of analysis that the Supreme Court engaged in. No, but the Eighth Circuit- Injected it out of hand. You did. Well, Garcia Urbano states specifically that if you were to allow this type of claim, this mistake of age, that it believed that that would eliminate statutory rape crimes from the definition of sexual abuse of a minor. So they clearly believe that. The Seventh Circuit has believed that. And so that's essentially what Supreme Court is saying, that statutory rape crimes definitely do have a part in this definition. So you can't accept that kind of argument that would potentially eliminate these types of offenses from the definition of sexual abuse of a minor. And also, as the government's brief noted, Section 2243 doesn't really have an element of knowledge of the victim's age. It's an affirmative defense. The prosecution does not have to prove that. So even trying to import that element into this definition of sexual abuse of a minor, which, again, has to be exhausted if you're claiming that this definition has new elements in it. The board has to first address that. But it's not even a properly made argument, because it's not, in fact, in 2243. And I would say the rest of the petitioner's claims are waived, because most are raised first in the reply brief. They weren't raised in the opening brief. All these other substantive challenges of sexual abuse of a minor, such as does it require penetration, was it an argument in the reply brief, these are substantive challenges. They have to first be exhausted and first raised in the opening brief. The only argument in the opening brief was whether it includes knowledge of the victim's age, which courts have rejected. That's not part of this definition. And also, that would need to be exhausted as well. Do you think the exhaustion requirement is a jurisdictional requirement, meaning we have no authority to waive it on equitable grounds? I would argue it is jurisdictional, because when the Supreme Court has looked at claims processing rules versus jurisdictional rules, the difference I've seen is in Boles v. Knowles, which is a 2007 case. It discusses how, when there's a tiny prison or a limit rooted in congressional statute, that's not waivable. That's not subject to equitable remedies. That's a mandatory jurisdictional rule. And we have the exhaustion requirement here in a congressional statute, 1252 D1. So I would say that's not something that's subject to equitable remedies. Moving on to Fishner's Catt claim, let's get the panelists more questions on the sexual abuse for minor issue. Excuse me. As this court has noted, the first step in a Catt claim in a criminal case is a jurisdictional bar at 1252 A2C. That limits the court's jurisdiction under Shabo to constitutional claims and questions of laws. So the court's not here to reweigh the evidence in this case. So you see what Petitioner's framing argument as is a misapplication of the law, that matter of JFF, well, first, has no part in this case. But it was also misapplied in that there should have been a cumulative assessment of the independent risk factors in their case. I think Tsukuri, which Petitioner 20HA'd, is very instructive on this point. Because while the court adopted this mathematical approach in Camara, which we would urge the court to reconsider, that was the unpublished disposition, we think the board should also get deference on how to define Catt claims since it's purely a regulatory creature. But keeping that as the law of the case, in Tsukuri, they didn't have the benefit of Camara. The board did not. But the court still found they properly applied the law regardless. Because what the board and adjudicator did, which is, these are very parallel claims here. It was someone claiming I possess particular traits that are going to get me arrested at the Baghdad airport. And then that's going to result in my torture. And the traits were Christianity. They were a felony conviction. And Westernization was another of the traits in Tsukuri. And the board's opinion and the IJ's opinion both cited those factors and found those aren't going to get you arrested at the airport based on the evidence you presented. And then looked at the interdependent links in the chain, which this court explained, matter of GFF works together with this cumulative risk assessment for independent factors. Why shouldn't we say that those are independent? Because each of them create a distinct risk of torture. Well, I believe they are independent. I think that's how the agency assessed them. You'll see in the IJ's opinion, specifically, pages 19 to 20 in the IJ's opinion. I don't have the AR, the administrative records sites in front of me. But it talks about these factors. And then it goes through Rebecca McDonald, the expert's testimony, and states, looking at these factors you present, these proxy factors, they don't, nothing shows that any of these factors are going to get you arrested at the airport. So I think they did consider them. Didn't use the magic words cumulatively, because also they didn't have the benefit of Camara yet, or this court's adoption of Camara. But I believe it looked at all these factors together and basically said 0 plus 0 plus 0 equals 0. Like, there's no evidence in the State Department report that these are factors that Iraqi authorities look for at the airport, much less to arrest you for. And then they moved on to the next interdependent link in the chain, where they're not even assuming that they, one, identify these factors, which were not readily apparent. Two, arrest you because of one of these factors. And the third link in the chain is that they'll have to detain you and then subject you to harm that rises to the level of torture. And the immigration judge had a very fulsome decision where they went over the State Department reports and chose to credit the absence of evidence in the State Department report, which had a whole section on the societal discrimination and abuse of women, where it did not make any mention of the claims that petitioners were offering. And credited that more heavily than Rebecca McDonald's testimony asserting the opposite. In her testimony, you see she doesn't believe the State Department report. She keeps saying that she has a better opinion in the State Department report on these things. Well, the immigration judge was within his authority to credit one over the other and weigh the evidence accordingly. And I think that's really what Petitioner is trying to challenge this case, is trying to get Rebecca McDonald's testimony weighted more heavily, because that's the only evidence she really had. Otherwise, the documentary evidence on her side was a few media articles discussing the killing of prostitutes in Baghdad. But the title of one of the articles is, who is killing these prostitutes? There's no answer in the articles. They don't know who. It's purely speculative if it was the Iraqi government at one hand, or PMF forces, or just rogue forces. We don't know. They don't support the fact that the Iraqi government is torturing prostitutes, much less arresting them at the airport. So I think the board properly assessed this claim. They looked at these factors and just found there was no evidence that any of these factors, even together, would lead to arrest at the airport, just like Sikiri. And that was the first link in the chain in Sikiri they said that was not met. And Sikiri found that sufficient. They said, you didn't prove any of these factors can really get you arrested at the airport, much less tortured later on. And there was no error in the decisions below. So I would argue that the court affirm the sexual abuse of a minor claim, or determination, and also dismiss the cap protection challenge for lack of jurisdiction. Thank you. And we'll hear from Bo. Just a few quick points, Your Honors. So number one, just in regard to the claim that was just made at the end, in regard to the JFF claim and independent versus interdependent bases, the immigration judge's decision at Administrative Record 94 and 95 states specifically, they contend and Ms. McDonald agrees that respondent's arrival at the airport alone will put the partners at risk. She explained that because respondent is a felon, under criminal code 291, she could be sent straight to jail. However, the court finds that respondent's arguments are principally based on speculation about what could theoretically happen. However, there is no concrete evidence that establishes a direct threat of torture against Iraqi women deportees similarly situated to respondent, as defined for purposes of CAT relief or to respondent specifically. This goes to the impossible evidentiary standard, which I raised earlier, and that the petitioner was unable to prove to similarly situated persons because no such person had been deported to Iraq, period. And the judge, the immigration judge, says, yes, it was speculation. Of course, all of this is speculation. According to someone who hasn't endured past persecution in Iraq, the reason she's likely to experience torture, more likely than not to be tortured in Iraq, is based on circumstances that arose after she came to the United States. So under the board decision matter of ZZO, when there is an objectively reasonable fear, de novo review applies to these bases. In regard to the Chevron and the Lenity argument, it's important to note that the Supreme Court actually, in Esquivel-Quintana, actually punted Chevron. The Supreme Court has, to my knowledge, never accorded Chevron deference to the BIA or to the board for its interpretations of aggravated felonies. I can find no case where actually the board has done so. It looks at the BIA's definition, and it often finds another wrong, which is what it did in Esquivel-Quintana. It looked at age, and didn't exactly do a Chevron analysis. And this is- Do you respond to your opposing counsel's statement that Lenity wouldn't apply anyway? So I actually think that Lenity does apply, and that's similar to Judge Sutton's concurrence in the Sixth Circuit version of Esquivel-Quintana, where he said, well, it's similar to the Chevron argument, but basically that the statute should be applied most favorably to the respondent, to the petitioner, to not have the greatest adverse consequences. And that's similar to the underlying argument in Rodriguez versus Rodriguez, where the dissent said specifically- hold on one second, let me get the example- where it said that, essentially, the definition for sexual abuse of a minor is going to be expanded whether you use 3509 or 2243. And that there are still additional removal grounds that exist for persons who have been convicted of some type of sexual crime against a child. AUSC 1227A2E says that a person can be deported for being convicted of child abuse, child neglect, or child abandonment. In those cases, when we have a reasonable choice of approach of defining an aggravated felony provision, and Congress has not indicated which of the reasonable approaches it prefers when there is an absence, we are constrained, which is what the board said, to apply that which least impinges upon the availability of relief from removal. So while, in this case, the petitioner could still be sent, potentially, to removal proceedings for this crime, it's our- we're arguing that it is not, because it's sexual abuse of a minor. And the final thing I will just add, with the court's permission, is that if the court were to accept the argument from Garcia Urbano versus Sessions, which is the Eighth Circuit case, it said that there is a two-year requirement, or that the age difference should not be more than two years in one day. And if we were to look, actually, at Michigan criminal sexual conduct in the third degree, there is actually not an age differential required. So therefore, if a person, if an individual who is 15 years old is a victim, and the perpetrator is 16 and 1 half or 17, that person could not be considered an aggravated felony because there is less than a two-year age differential between those ages. And that CSC third degree is, I argue, a more serious crime than criminal sexual conduct in the fourth degree. Thank you very much for your time today. We ask that this court either remand, and or reconsider whether or not CSC fourth is an aggravated felony. Thank you. Thank you very much for your arguments. And the case is submitted.